Calvin B. TRUMBLY, Appellant,

v.

STATE of Alaska, Appellee.

No. 1737.

Supreme Court of Alaska.

Nov. 9, 1973.

Olof Hellen and Bryan Timbers, Asst. Public Defenders, Herbert Soll, Public Defender, Anchorage, for appellant.

Daniel W. Hickey, Asst. Atty. Gen., John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

OPINION

RABINOWITZ, Chief Justice.

After having initially been charged with a felony, appellant Trumbly pled guilty to the misdemeanor offense of simple assault. Thereafter, Trumbly was sentenced to 120 days imprisonment. Service of this period

of incarceration was suspended and appellant was placed on probation for a period of two years. Among the conditions of probation which were imposed, Trumbly was required to report periodically to his probation officer and was prohibited from leaving a designated geographical area without prior consent of this officer.

Shortly after imposition of sentence, Trumbly failed to report as required and left the State of Alaska without having obtained the requisite approval. The probation service then moved to revoke Trumbly's probation. A revocation hearing was held at which Trumbly personally appeared and was represented by counsel. During the course of the hearing, Trumbly admitted that he had not reported as required, and that he had departed the State of Alaska without approval of his probation supervisor. Trumbly's defense to the effort to revoke his probation was that of insanity. It was Trumbly's position that he suffered from a mental disease or defect which deprived him of the substantial capacity to conform his conduct to the conditions of probation. At the hearing Trumbly produced expert psychiatric testimony in support of this defense. No rebuttal or contradictory psychiatric evidence was introduced by the State of Alaska.

One of the arguments advanced by the state in opposition to Trumbly's defense of insanity was that the defense is inappropriate in a probation revocation proceeding. Enlarging on this thesis, the state contends that the purpose of a probation revocation hearing is not to adjudicate criminal responsibility, and that it is not necessary to show the probationer acted with any particular *mens rea* in violating the conditions of his probation. Thus, the state would have us conclude that the de-

fense of insanity is not available in a probation revocation hearing since this type of proceeding has been traditionally limited to adjudication of guilt or criminal responsibility.

At the conclusion of the revocation hearing, the superior court decided that Trumbly's probation should be revoked. Trumbly was then sentenced to six months incarceration, execution of the sentence was suspended and Trumbly placed on probation. A condition of probation was that Trumbly was to serve 30 days in a correctional facility. Trumbly now brings this appeal from the superior court's revocation of his probation.

Taking a narrow view of the case, the superior court's revocation order could be affirmed on the ground that, as trier of the fact, the superior court was not bound to accept Trumbly's expert psychiatric testimony.[1] In other words, it was within the exclusive province of the trial judge, as fact determiner, to evaluate Trumbly's psychiatric testimony and to accord to it such weight as he deemed appropriate. Thus, assuming the defense of insanity is available in a probation revocation hearing, we believe the trial judge could reasonably have discounted Trumbly's expert testimony, and concluded this evidence was insufficient to put the state to the task of proving Trumbly's sanity at the times he failed to report and departed from Alaska without permission.

On the other hand, we think the short answer to Trumbly's contention is that the defense of insanity is irrelevant to the issues which are to be determined in a probation revocation hearing. At such a hearing, the inquiry is focused on whether the probationer engaged in conduct viola-

---

1. In Bowker v. State, 373 P.2d 500, 501–502 (Alaska 1962), we said:

We shall not adopt a rule which would treat medical testimony as conclusive merely because it is not disputed by other medical testimony. The jury should be free to make an independent analysis of the facts on which the expert's opinion rests, and thus exercise their historic function of passing on the credibility of the witness.

tive of the conditions under which he was permitted to escape incarceration. We are not persuaded that a probationer should be able to prevail upon an assertion that his probation should not be revoked because mental illness renders him unable to conform his conduct to the terms of his probation. Conformity to reasonable and lawful terms of probation is a prerequisite to the continuation of probationary status.

 A probation revocation hearing is not a criminal proceeding.[2] The focus of the hearing should be to determine whether the probationer violated one or more of the conditions of his probation and the appropriate disposition in the event it is determined that petitioner violated his probation. In Morrissey v. Brewer, 408 U.S. 471, 479–480, 92 S.Ct. 2593, 2599, 33 L.Ed. 2d 493 (1973) Chief Justice Burger wrote

"The first step in a [parole] revocation decision involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more of the conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation.

The requirement that probation revocation follow after a showing of "good cause"[3] requires the trial judge to find that continuation of probationary status would be at odds with the need to protect society and society's interest in the probationer's reha-

bilitation. Revocation should follow violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved.[4]

██ ██ In Snyder v. State, 496 P.2d 62, 63 (Alaska 1972), we quoted with approval United States v. Feller, 17 Alaska 417, 424, 156 F.Supp. 107, 110 (1957), where it was said:

The trial judge who imposed the sentence has certainly broad discretionary powers to revoke probation, and the probationer may not complain if he has been given ample opportunity to appear before the Court imposing the sentence, and he has been permitted to combat the accusation or charges against him and there has been no abuse of discretion on the part of the Court.

Review of the record in the instant case leaves us uncertain as to whether or not the trial court's revocation of Trumbly's probation was arbitrary or reflective of a conscientious judgment which served the ends of justice.[5] More particularly we cannot say with the requisite degree of assurance that a conscientious judgment was made by the trial court in committing Trumbly to prison for a period of 30 days. As was noted previously, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593 33 L. Ed.2d 484 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 36 L.Ed.2d 656 (1973) illuminate the dual nature of a probation revocation hearing. The first facet of such a hearing involves "a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more

2. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

3. AS 12.55.110.

4. *See* DiCerbo, When Should Probation Be Revoked? 30 Fed.Prob., June 1966, at 11; American Bar Association Project on Standards for Criminal Justice, Standards Relating to Probation § 5.1 (Approved Draft 1970). *Compare* Model Penal Code § 301.3 (P.O.D. 1962).

5. In Snyder v. State, 496 P.2d 62, 63 (Alaska 1972), we further quoted that portion of the *Feller* case where the court said:
 What is required in such hearings is the exercise of conscientious judgment, and not arbitrary action; that the discretion of the Court has not been abused; and that the facts revealed at the hearing satisfy the Court that the modification or revocation of the sentence, or a part thereof, will serve the ends of justice.

conditions of his parole." In the case at bar it is undisputed that Trumbly acted in violation of the terms of his probation. The second aspect of the probation hearing requires a determination as to the disposition to be made once violation of the conditions of probation are established. Trumbly's mental state at the time of the violation of the terms of his probation as well as at the time of the revocation hearing is relevant to the resolution of the second issue. It is possible that the superior court in fact considered the evidence relating to Trumbly's mental state in reaching its decision to incarcerate Trumbly. . On the other hand, since we find the record lacking in clarity in this regard, we deem a remand appropriate in order to permit the trial court to review its disposition in light of the foregoing.

One other aspect of the case should be mentioned. At oral argument, this court, on its own motion, questioned counsel concerning the validity of the sentence the superior court entered upon its revocation of Trumbly's probation. Specifically, our questioning focused upon the fact that initially Trumbly was sentenced to 120 days imprisonment, service of which was suspended and Trumbly placed upon probation for a two-year period. In revoking Trumbly's probation, the superior court imposed a longer period of incarceration than was called for in the original sentence. More particularly, the superior court imposed a sentence of 6 months with all but 30 days suspended upon probation. In view of the fact that Trumbly did not question the legality of this sentence, we think it appropriate that this question be remanded to the superior court for the purpose of permitting the parties to present arguments regarding the validity of the sentence in question, and to permit the trial court to review the sentence it imposed.

Remanded.

ERWIN and FITZGERALD, JJ., not participating.