STATE of Alaska, Appellant,

v.

Leslie DEVOE, Appellee.

No. 2788.

Supreme Court of Alaska.

Feb. 16, 1977.

Jane F. Kauvar, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Marlin D. Smith, Johnson, Christenson, Shamberg & Link, Inc., Fairbanks, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BURKE, Justice.

Appellee Leslie DeVoe is currently on probation, under the supervision of the Department of Health and Social Services, following his conviction on a charge of attempted robbery. By a judgment entered on December 20, 1974, DeVoe was sentenced to three and one-half years of imprisonment, with two and one-half years

suspended, and placed on probation during such period of suspension. One of the conditions of DeVoe's probation was that he obey all municipal, state, and federal laws.[1]

On November 12, 1975, the State of Alaska filed a petition to revoke DeVoe's probation. The petition alleged, among other things, that while on probation DeVoe had violated the laws of the State of Alaska by committing the crime of receiving and concealing stolen property.[2]

A hearing on the petition was held in the superior court on December 4, 1975. At the hearing the state presented evidence in support of the petition. At the conclusion of the hearing the judge, the Honorable Warren W. Taylor, announced that he would withhold any decision on the matter, anticipating that there would be a jury trial on the charge of receiving and concealing stolen property.

On December 18, 1975, the State of Alaska requested that Judge Taylor rule on the merits of the petition, after informing him that it had decided not to seek a separate indictment on the new charge. Thereafter, on December 26, 1975, Judge Taylor entered an order denying the petition. The record makes it clear that the sole basis for the denial was the fact that there had been no indictment and conviction for the additional crime of receiving and concealing stolen property. This appeal, by the State, followed.

I.

The first question that we must consider is whether the state has the right to appeal in this case. We conclude that it does.

Generally, an appeal to this court is a matter of right. This is so by virtue of the provisions of AS 22.05.010.[3] The legislature, however, in enacting that statute, saw fit to limit the state's right to appeal *in criminal cases.*[4] In such cases, apart from its right to appeal a sentence on the ground that it is too lenient,[5] the state can appeal only to test the sufficiency of the indictment or information. The state's right to appeal in this case therefore depends upon the characterization given to the proceedings in the court below.

In *Trumbly v. State,* 515 P.2d 707, 709 (Alaska 1973), we clearly stated our view that "[a] probation revocation hearing is not a criminal proceeding."[6] Although recognizing that such proceedings are nec-

---

1. AS 12.55.080 provides:

   *Suspension of sentence and probation.* Upon entering a judgment of conviction of a crime, or at any time within 60 days from the date of entry of that judgment of conviction, a court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation for a period and upon the terms and conditions as the court considers best.

2. AS 11.20.350 provides:

   *Buying, receiving, or concealing stolen property.* A person who buys, receives, or conceals money, goods, bank notes, or other thing which may be the subject of larceny and which has been taken, embezzled, or stolen from another person, knowing it to have been taken, embezzled, or stolen, is punishable by a fine of not more than $1,000 and by imprisonment for not less than one year nor more than three years.

3. AS 22.05.010 provides in part:

   (a) . . . An appeal to the supreme court is a matter of right, except that the state shall have no right of appeal in criminal cases, except to test the sufficiency of the indictment or information and under (b) of this section.

   (b) The supreme court has jurisdiction to hear appeals of sentences of imprisonment lawfully imposed by the superior courts on the grounds that the sentence is excessive or too lenient.

   •      •      •      •      •

4. *Id.*

5. *See also* AS 12.55.120(b), which provides in part:

   A sentence of imprisonment lawfully imposed by the superior court may be appealed to the supreme court by the state on the ground that the sentence is too lenient

   •     •    •  •

6. Citing *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *See also Paul v. State,* 560 P.2d 754 (Opinion No. 1375, Alaska 1977); *State v. Sears,* 553 P.2d 907 (Alaska 1976).

essarily an outgrowth of a criminal case,[7] we have never been persuaded to modify this view [8] and will not do so now. Therefore, we hold that the state has the right to appeal in this case. Since the order appealed from was not entered in a *criminal case*, the statutory limitation on the state's right of appeal is not applicable.[9]

## II.

In reaching his decision Judge Taylor relied heavily on the suggestion contained in Section 5.3 of the American Bar Association Standards Relating to Probation (Approved Draft, 1970). That section provides in part:

A° revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge.

In his memorandum of decision Judge Taylor said:

Where charges have been dismissed or effectively withdrawn before trial, as in this case, the court is convinced that to proceed further on the same charges of probation violation could minimize the usual constitutional safeguards attendant in jury trials on the merits of such charges. It may result in relaxation of the rules of evidence and a lesser burden of proof and it would result in the absence of a jury of the defendant's peers. The court concludes further consideration of the charges which were pending against the defendant would result in undue unfairness and would not serve the ends of justice. Therefore, the petition is denied.

These views, while certainly having respectable support, are contrary to the well established law of Alaska. In *Snyder v. State*, 496 P.2d 62 (Alaska 1972), we were confronted with essentially the same issue as presented here. In that case appellant's probation was revoked after the superior court found that he had committed an unprovoked assault and battery while on probation. There, a *petition to revoke probation* was filed alleging the new criminal act, but no separate charges were brought by the state. On appeal, Snyder asserted that it was an abuse of the trial court's discretion to revoke his probation for the commission of an additional crime, in the absence of formal charges and a conviction. Noting that the overwhelming weight of authority is to the contrary, we rejected his argument, saying: "We decline to adopt such a unique position." [10] We chose, instead, to adopt the standard first announced in territorial days in *United States v. Feller*, 156 F.Supp. 107, 17 Alaska 417 (1957), where the court said:

We are confronted with a further question herein. Where the grounds for the revocation of the sentence is based upon the violation of conditions of the probation which amount, in themselves, to a crime, is it necessary before a hearing on the revocation of the suspended sentence may be held that the probationer must be tried and convicted of the crime alleged? Summary hearings upon the revocation of a suspended sentence have been upheld. What is required in such hearings is the exercise of conscientious judgment, and not arbitrary action; that the discretion of the Court has not been abused; and that the facts revealed at the hearing satisfy the Court that the modification or revocation of the sentence, or a part thereof, will serve the ends of justice. (Citations omitted)

The trial judge who imposed the sentence has certainly broad discretionary powers to revoke probation, and the probationer may not complain if he has been given ample opportunity to appear before the Court imposing the sentence, and he has been permitted to combat the accusation or charges against him and there has

---

7. *See Adams v. Ross*, 551 P.2d 948, 950 (Alaska 1976).

8. *See Martin v. State*, 517 P.2d 1389, 1397–98 (Alaska 1974).

9. There is no question that the order denying the petition to revoke probation is a "final judgment" and, therefore, otherwise appealable under Rule 5, Alaska Rules of Appellate Procedure.

10. 496 P.2d at 63.

been no abuse of discretion on the part of the Court. (Citations omitted).[11]

■■■ Today, we reaffirm the views expressed in *Snyder v. State* and hold that Judge Taylor erred in ruling that conviction was required before DeVoe's probation could be revoked. The law of Alaska contains no such requirement. We are further compelled to hold that Judge Taylor's denial of the petition, solely because the state had elected not to charge and convict DeVoe in a separate criminal proceedings, was a clear abuse of discretion.

Our decision should not be taken as an expression of any opinion on our part that actual revocation of DeVoe's probation is required. It simply reflects our conclusion that the trial judge imposed an improper burden on the state. It remains for the superior court to decide whether the evidence establishes that DeVoe violated the conditions of his probation and, if so, the appropriate disposition.[12]

■■■ Conformity to reasonable and lawful conditions of probation is, of course, a prerequisite to the continuation of probationary status.[13] Probation can be revoked only for good cause.[14] In *Trumbly v. State*, 515 P.2d 707 (Alaska 1973) we held that this

... requires the trial judge to find that continuation of probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation.[15]

However, we further stated:

Revocation should follow violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved. (footnote omitted) [16]

REVERSED and REMANDED for further proceedings in conformity with this opinion.

RABINOWITZ, Justice, concurring.

Although I am in agreement with the court's conclusion that a probationer's conditional liberty may be revoked for criminal conduct without the necessity of formal charges and conviction, I think a facet of the superior court's ruling in the case at bar is deserving of discussion.

The state has significant interests in pursuing probation revocation proceedings either separately or in addition to separate criminal proceedings.[1] Nevertheless, in circumstances in which the state makes the decision to hold a revocation hearing prior

---

11. 17 Alaska at 424, 156 F.Supp. at 110.

12. *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973).

13. *Id.*

14. AS 12.55.110 provides:
   *Notice and grounds for revocation of suspension.* When sentence has been suspended, it shall not be revoked except for good cause shown. In all proceedings for the revocation of a suspended sentence, the defendant is entitled to reasonable notice and the right to be represented by counsel.

15. 515 P.2d at 709.

16. *Id.*

1. As one commentator has noted:
   Revocation hearings are not required to be procedurally equivalent to criminal trials for two reasons. First, the deprivation of conditional liberty that results from revocation is not as severe as the deprivation of absolute liberty that results from conviction of a crime. Second, both the state and the individual have an interest in ensuring that revo-

cation hearings do not become overly adversarial and formal: As the Court emphasized in *Gagnon*, '[I]n the greater self-consciousness of its quasi-judicial role in an adversary proceeding the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate than to continue nonpunitive rehabilitation.' Moreover, a relatively informal revocation proceeding might be held earlier and more expeditiously than a criminal trial. The defendant who has not committed a violation can thus return quickly to the more normal life situation that the conditional liberty system assumes aids in rehabilitation. Furthermore, the state's financial costs are substantially reduced by not requiring formal adversarial hearings. Finally, enabling a state to revoke conditional liberty with relative ease may encourage it to grant conditional liberty in more cases, since it will be able quickly to terminate the experiment if an individual proves unable to handle this limited freedom.
   In addition to its interest in an informal revocation proceeding, the state also has an interest in holding a separate criminal trial: Because the punishment obtainable in a revo-

to initiation of criminal proceedings, the possibility of a future criminal trial has an important impact upon the probationer's decision whether or not to testify and whether or not to present a defense at the revocation proceeding. Consideration of such factors led the American Bar Association to recommend that:

A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. However, upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge.[2]

This position has been adopted by the American Law Institute[3] and, at least arguably, by several state legislatures.[4]

When the probation revocation proceeding is based upon alleged criminal conduct as to which the probationer's innocence or guilt remains to be adjudicated in a criminal proceeding, there is the possibility of dilution of the probationer's privilege against self-incrimination, since at the criminal trial the prosecutor may be able to use evidence which the probationer presented in the probation revocation proceeding. Thus, in many situations ". . . . the defendant is confronted with the choice of either producing evidence at the revocation hearing and thus providing the state with incriminating evidence, or not producing evidence and thus foregoing a valuable defense."[5] In my view this is a problem of some significance which calls for solution.

Admittedly, here we are not required to address this question since the criminal charges against DeVoe were dismissed and the state determined it would go forward only with the probation revocation proceedings.[6] Nevertheless, I think the question discussed here is deserving of study by Alaska's legislature and Bar so that a solution can be reached to the self-incrimination

cation hearing must be within the range of permissible punishments for the first offense committed, the state, in order to discharge its duty of societal protection, may need a criminal trial to obtain a punishment commensurate with the severity of the second offense. (footnotes omitted) Note, *Revocation of Conditional Liberty for the Commission of a Crime: Double Jeopardy and Self-Incrimination Limitations*, 74 Mich.L.Rev. 525, 528 (1976).

2. ABA Standards Relating to Probation § 5.3 (Approved Draft 1970). The Commentary, at page 63, states:

The relative informality of a probation revocation proceeding, as compared to the trial of an original criminal charge, underlines the danger. Relaxation of rules of admissibility of evidence, the absence of a jury, a lesser burden of proof—factors such as these can lead to an abuse of the proceeding by basing revocation upon a new criminal offense when the offense could not be proved in an ordinary criminal trial. Additional complexity is introduced by the position in which the probationer is put as regards his privilege against self-incrimination: a revocation proceeding before trial of the charge on which it is based well could compromise the assertion of this fundamental constitutional right. *Cf. Marchetti v. United States*, 390 U.S. 39 [88 S.Ct. 697, 19 L.Ed.2d 889] (1968); *Garrity v. New Jersey*, 385 U.S. 493 [87 S.Ct. 616, 17 L.Ed.2d 562] (1967); *Spevack v. Klein*, 385 U.S. 511 [87 S.Ct. 625, 17 L.Ed.2d 574] (1967).

These problems can be minimized if the probation revocation proceeding is postponed until after the disposition of the new criminal charge. The record will then be clear and the possibilities of unfairness to the probationer will have been sharply reduced, particularly as they involve the privilege against self-incrimination. This standard accordingly suggests such postponement as an operating policy. *Compare* Model Penal Code § 301.3, comment at 150–51 (Tent. Draft No. 2, 1954).

3. Model Penal Code § 301.3.

4. *Revocation of Conditional Liberty, supra* note 1, at 527–28, n. 13.

5. *Id.* at 536–37.

6. Compare *McGinnis v. Stevens*, 543 P.2d 1221, 1232–35 (Alaska 1975), where in the context of prison disciplinary hearings in which the prisoner is charged with a major infraction involving conduct which constitutes a felony, we discussed the applicable Division of Corrections' regulations and the inmates' privilege against self-incrimination and right to counsel.

question for future probation or parole revocation proceedings which are based on allegedly criminal conduct which has not as yet been the subject of adjudication in a criminal proceeding.[7]

---

**7.** In addition to the American Bar Association Standard, another proposed solution is to statutorily grant use immunity to the probationer or parolee at the revocation hearing. *See Revocation of Conditional Liberty, supra* note 1, at 553–54.